SIN HO NAM, Plaintiff,

v.

Ramon K. QUICHOCHO and Joaquin Q. Atalig, Defendants.

Civil Case No. 10–0007.

United States District Court, D.N. Mariana Islands.

Sept. 1, 2011.

Colin M. Thompson, The Law Offices of Colin M. Thompson, Saipan, MP, for Plaintiff.

Michael W. Dotts, O'Connor Berman Dotts & Banes, Ramon K. Quichocho, Saipan, MP, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

MARK W. BENNETT, District Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ................................................. 1155
  A. *Factual Background* ...................................... 1155
    1. *The parties and the genesis of the Lease* ........... 1155
    2. *Pertinent terms of the Lease* ...................... 1156
    3. *Nam's attorney-client relationship with Quichocho* ... 1159
    4. *Events leading to termination of the Lease* ......... 1159
  B. *Procedural Background* ................................... 1163
    1. *Nam's Complaint* .................................. 1163
    2. *The defendants' Answer And Counterclaim* .......... 1164
    3. *The cross-motions for summary judgment* ........... 1165

II. *THE DEFENDANTS' MOTION TO STRIKE DECLARATION* ......... 1165

III. *THE CROSS–MOTIONS FOR SUMMARY JUDGMENT* ............... 1166
  A. *Standards For Summary Judgment* ........................ 1166
  B. *The Plaintiff's Claims* ................................. 1167
    1. *Breach of contract* ............................... 1167
      a. *Arguments of the parties* ...................... 1167
        i. *Nam's arguments* .......................... 1167
        ii. *The defendants' arguments* ................ 1168
      b. *Analysis* ...................................... 1169
        i. *Principles of contract law* ............... 1169
        ii. *Who breached?* ............................ 1170
    2. *Restitution* ...................................... 1174
      a. *Arguments of the parties* ...................... 1174
      b. *Analysis* ...................................... 1175
    3. *Nam's breach-of-fiduciary-duty claim* ............. 1175
      a. *Arguments of the parties* ...................... 1175
        i. *Nam's arguments* .......................... 1175
        ii. *The defendants' arguments* ................ 1176
      b. *Analysis* ...................................... 1176

4. *Summary* ...................................................................1178
C. **The Defendants' Counterclaims** ...............................................1178
  1. *Slander of title* ........................................................1178
    a. *Arguments of the parties* ........................................1178
    b. *Analysis* .......................................................1179
  2. *Breach of contract* ....................................................1179
  3. *Breach of contractual duty to indemnify* ...............................1180
    a. *Arguments of the parties* ........................................1180
    b. *Analysis* .......................................................1180
  4. *Waste* .................................................................1180
    a. *Arguments of the parties* ........................................1180
    b. *Analysis* .......................................................1180
  5. *Quiet title* ...........................................................1181
    a. *Arguments of the parties* ........................................1181
    b. *Analysis* .......................................................1181
  6. *Summary* ...............................................................1181

*IV.* **CONCLUSION** ..................................................................1181

While contract law does not contain a "smell test," the facts of this exotic island real estate contract dispute between a Saipan lawyer lessor (and another co-owner) and a Korean businessman lessee reek with the pungency of "a five-week-old, unrefrigerated dead [red-gilled emperor] fish."[1] Because the lessors attempted to terminate the lessee's 55–year lease, on which the lessee had made full payment up front, after only two years, the lessee asserts a claim of breach of fiduciary duty against the attorney-lessor, with whom the lessee believed that he had an attorney-client relationship, and claims of breach of contract and restitution against both lessors. The lessors have denied the lessee's claims and have asserted counterclaims for slander of title, breach of contract, express contractual indemnity, waste, and quiet title. This case is now before me on cross-motions for summary judgment and the

1. Courts have described the "clearly erroneous" standard of review as requiring that the decision under review "strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988); *see also United States v. Lanham*, 617 F.3d 873, 888 (6th Cir.2010); *United States SEC v. Pirate Investor, L.L.C.*, 580 F.3d 233, 243–44 (4th Cir.2009); *United States v. Bussell*, 504 F.3d 956, 962 (9th Cir.2007); *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir.2001). Indeed, the "dead fish smell test" has been a great favorite with dissenters in cases involving "clearly erroneous" review too numerous for citation. The "dead fish smell test" has been used in other contexts, as well. *See, e.g., L.J. v. Wilbon*, 633 F.3d 297, 311 (4th Cir.2011) (describing the "clearly erroneous" exception to the "law of the case" doctrine using the "dead fish" analogy);

*TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir.2009) (same); *In re Antrobus*, 563 F.3d 1092, 1098 n. 2 (10th Cir.2009) (same); *Gochicoa v. Johnson*, 238 F.3d 278, 292 (5th Cir.2000) (same); *Rothner v. City of Chicago*, 929 F.2d 297, 301 n. 6 (7th Cir.1991) (same); *Craigmiles v. Giles*, 312 F.3d 220, 225 (6th Cir.2002) ("Tennessee's justifications for the 1972 amendment come close to striking us with 'the force of a five-week-old, unrefrigerated dead fish,' a level of pungence almost required to invalidate a statute under rational basis review." (citations omitted)). I find it particularly applicable here to the question of whether and which parties are entitled to summary judgment on the claims and counterclaims presented.

According to the Western Pacific Region Fishery Management Council, "In CNMI, fishermen target red-gilled emperor. About 150 skiffs fish the islands and banks from Rota to Zealandia Bank north of Sariguan." *See* www.wpcouncil.org/MarianasFEP-fisheriestoday.html (accessed 08/29/11).

lessors' motion to strike one of the declarations offered by the lessee in support of his motion for summary judgment. I find that the odor here is so profound that no reasonable jury could be in doubt about the outcome on many of the claims and counterclaims asserted, so that summary judgment is warranted on those claims.

## I. INTRODUCTION

### A. Factual Background

I will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, I will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning their cross-motions for summary judgment. Unless expressly indicated otherwise, the parties agree that the facts stated are undisputed.[2]

### 1. The parties and the genesis of the Lease

Plaintiff Sin Ho Nam is a Korean national who avers that he first came to Saipan as a tourist in November 4, 2007, but, because he enjoyed Saipan and wished to spend more time there, he decided to try to lease real property on the island. De-

fendant Ramon K. Quichocho is an attorney in Saipan, licensed to practice law in the CNMI, and the part owner, with defendant Joaquin Q. Atalig, of the real property at issue in this litigation, near Ladder Beach in Saipan (the Premises),[3] as well as some adjacent property. In November of 2007, Nam viewed the Premises and decided to try to lease it.

Nam asserts that he first met Quichocho on December 6, 2007, when Nam and his translator, Mr. Ha, came to Quichocho's law office to execute the lease for the Premises. However, the defendants assert that Mr. Ha had made inquiries about the Premises prior to that. Indeed, they assert that on November 29, 2007, Mr. Ha made an earnest money deposit of $5,000.00, to hold the lease on the Premises and to pay the fee for a preliminary title report. The defendants also contend that Atalig and Mr. Ha negotiated the Ground Lease for the premises. The parties agree that Quichocho prepared the Ground Lease, in English, for Nam's signature. Quichocho did not know if Nam was represented by an attorney in the transaction, does not recall asking if he was, and certainly did not speak to any attorney representing Nam prior to execution of the

---

**2.** I have not necessarily stated facts precisely as the parties have stated them; instead, I have occasionally recast them to eliminate disputed language, to track more precisely the language of documents or deposition testimony, and for other editorial or organizational reasons. Nevertheless, I believe that I have accurately indicated which facts are undisputed and which are disputed and why.

**3.** Although the parties expend part of their statements of fact discussing the title history of the property in question, I do not find that the title history is significant to the disposition of the questions presented in the motions for summary judgment. On the other hand, it is appropriate to include, at least for the sake of clarity, the precise description of the property at issue in the lease eventually entered into

between Nam, Quichocho, and Atalig. That description is as follows:

> Lot No. 043 L 81, containing an area of 4,045 square meters, more or less, as more particularly described on DLS Check No. 043 L 20, the original of which was registered with the Commonwealth Recorder's Office; and
>
> Lot No. 043 L 82, containing an area of 4,032 square meters, more or less, as more particularly described on DLS Check No. 043 L 20, the original of which was registered with the Commonwealth Recorder's Office, (collectively, the "Premises").

Declaration of Nam's Counsel (docket no. 30), Exhibits (docket no. 30–1) at 217, Exhibit 2 (Ground Lease) (Bates Stamp 000004), ¶ 1; see also Defendants' Answer and Counterclaim (docket no. 3), Exhibit 1.

Ground Lease. The parties agree that Quichocho explained the terms of the Ground Lease to Nam, through the translator, Mr. Ha, then Nam and Mr. Ha took the draft Ground Lease and left Quichocho's office. Nam and Mr. Ha returned the same afternoon to execute the Ground Lease. Atalig also executed the Ground Lease in Saipan on December 7, 2007.

### 2. Pertinent terms of the Lease

Among other terms, the Ground Lease states that it is "for a term of fifty-five (55) years, commencing on the *6th* day of *December*, 2007, and ending on the *5th* day of *December*, 2062, unless sooner terminated as provided herein," Complaint, Exhibit A (Ground Lease), ¶ 3 (underlining in the original),[4] in exchange for a payment of $218,079.00, due upon execution of the Lease. *Id.* at ¶ 4.[5] Nam also agreed to pay all real estate taxes, if any, levied on the Premises during the term of the Lease, *id.* at 8(a), and any utilities charges. *Id.* at 9. The Ground Lease permitted Nam to "use, improve, and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee shall not commit waste." *Id.* at ¶ 2. The Lessors warranted quiet enjoyment of the property, as follows:

> **6. Lessor's Warranty of Quiet Enjoyment.** Lessor covenants and agrees that Lessor shall, upon the commencement date of the term of this Lease as hereinafter set forth, place Lessee in quiet possession of the Premises and that Lessee, upon paying the rent and other charges herein provided for and observing and keeping all the covenants, conditions, and terms of this Lease on Lessee's part to be kept or performed, shall lawfully and quietly hold, occupy and enjoy the Premises during the term of this Lease without hindrance or molestation by Lessor or any other person claiming by, through or under Lessor.

Ground Lease at ¶ 6.

The parties' claims revolve in large part around two "insurance" provisions of the Ground Lease, one pertaining to "liability insurance" and the other to "fire and casualty insurance." Those provisions are the following:

> **10. Liability Insurance.** Lessee shall save and keep harmless Lessor from any loss, cost, damage, or expense arising out of any accident or other occurrence, causing injury to any person or property, and due directly or indirectly to the use or occupancy of the demised premises by Lessee. In connection therewith, Lessee further shall and will, at its own expense[,] provide and keep in force for the benefit of the Lessor comprehensive general liability insurance in which the Lessor shall be named as an additional insured with minimum limits of liability in respect to bodily injury of $100,000.00 for each person and $300,000.00 for each occurrence and in respect of property damage of $300,000.00 for each occurrence. The policy shall contain a clause requiring that the Lessor be given thirty (30) days notice prior to any cancellation or termination of the policy. A copy of such policy or policies or an acceptable certificate shall be deposited with the Lessor within thirty (30) days of the same being obtained by the Lessee. The Lessee shall pay all premiums and other

---

4. Copies of the Ground Lease were also filed with the parties' respective Motions For Summary Judgment. For the sake of simplicity, and to avoid constant references to duplicate versions, I will simply rely on the copy attached to the Complaint.

5. The parties do not dispute that the defendants waived the time for performance of the lease payment for about ten days or that, on or about December 17, 2007, Nam paid the defendants the final installment on the payment due on the Ground Lease.

charges payable in connection with insurance carried by the Lessee.

**11.** *Fire and Casualty Insurance.* Lessee, at Lessee's sole expense, shall keep all improvements created on the Premises insured against loss or damage by fire or other casualty. Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall be apportioned, between Lessee and Lessor based upon the number of years remaining in the term of this Lease. If, for example, only one fourth of the term of the Lease period remains at the time the improvements are destroyed, Lessee shall only be entitled to one fourth of the insurance proceeds. Provided, that if both parties agree, the entire proceeds may be used to reconstruct the improvements destroyed. The policy shall contain a clause requiring that the Lessor be given thirty (30) days notice prior to any cancellation or termination of the policy. A copy of such policy or policies or an acceptable certificate shall be deposited with the Lessor within thirty (30) days of the same being obtained by the Lessee. The Lessee shall pay all premiums and other charges payable in connection with insurance carried by the Lessee.

Ground Lease at ¶¶ 10–11. The defendants contend that ¶¶ 10 and 11 of the Ground Lease required both comprehensive general liability insurance and fire and casualty insurance coverage, respectively, for the entire term of the lease and that these provisions were material considerations in Atalig and Quichocho's agreeing to enter into a lease with Nam and in agreeing to the amount of the lease price. They assert that they would not have entered into the Ground Lease without such provisions for insurance coverage. The defendants also contend that, because these terms are material, violation of them constitutes material breach of the contract under ¶ 21(e), quoted below.

The Ground Lease also includes a provision concerning "indemnity," as follows:

**12.** *Indemnify, Defend, and Hold Harmless.* As a part of the consideration hereof, the Lessee hereby releases and forever discharges and agrees to indemnify and hold harmless the Lessor, Lessor's successors, employees and assigns, from any and all injury or loss and all liability for injury or loss to persons or property which occur on the Premises or which arise out of or in connection with any activities under this Lease during the term of this Lease, any extension thereto, or during any holdover by Lessee.

As part of the consideration hereof, the Lessee also agrees to defend the Lessor, Lessor's employees, successors, and assigns, from and against any claim, demand or lawsuit with respect to the subject of the indemnity contained herein, whether or not such claims, demands or actions are rightfully or wrongfully brought or filed and against all costs incurred by the Lessor, or Lessor's employees, successors, and assigns therein. In case a claim should be brought or an action filed with respect to the subject of indemnity herein, Lessee agrees the Lessor, Lessor's successors, employees and assigns may employ attorneys of their own selection to appear and defend the claim or action on their behalf, at the expense of the Lessee. The Lessor, Lessor's successors, employees and assigns, at their own option, shall have the sole authority for the direction of their own defense, and shall be the sole judge of the acceptability of any compromise or settlement of any claims or actions against them.

Ground Lease at ¶ 12.

The pertinent portions of the "default" provisions of the Ground Lease are the following:

21. **Default.** Any one of the following shall constitute a breach of this Lease:

* * *

(c) Lessee shall abandon the leased Premises; or

* * *

Ground Lease at ¶ 21(a), (e). The Ground Lease provided remedies for the lessee's breach, as follows:

22. **Remedies of Lessor for Breach of Lessee.** In the event Lessee breaches this Lease and fails to correct the breach within the time provided, Lessor may exercise any of the following remedies or any other remedy available to Lessor at law or in equity, and all such remedies shall be cumulative and nonexclusive of any one or more such remedies, and exercise of one remedy shall not be deemed to be an exclusive election of the remedy or remedies exercised or a waiver of the remedies not exercised: [specifying remedies including re-entry, termination of the lease upon 60 days notice, and reletting of the Premises.]

Ground Lease at ¶ 22.

The Ground Lease also provided for notices, such as notices of default, to be sent to specified addresses for each party, as follows:

26. **Notice.** Except as otherwise specified herein, all notices required or permitted under this Lease shall be in writing and shall be delivered in person or deposited in the United States mail in an envelope addressed to the proper party, certified mail, postage prepaid as follows:

| | |
|---|---|
| LESSOR: | P.O. Box 505621 |
| | Saipan, MP 96950 |
| LESSEE: | PMB 890 Box 10001 |
| | Saipan, MP 96950 |

or at such other address as the Lessor or Lessee may from time to time specify by written notice. All notices shall be deemed delivered (1) on the date personal delivery is made, or (2) on the date falling three days after the date of the post mark by the U.S. Post Office of any mail or notice properly addressed and containing sufficient postage.

Ground Lease at ¶ 26. The defendants also assert that the following "miscellaneous provisions" are relevant to the present dispute:

27. **Miscellaneous Provisions.**

* * *

(f) *Time of the Essence.* Time is of the essence of this Lease and of each provision.

* * *

(n) *Proration and Refund of Prepaid Rental in Certain Situations.* In the event that this Lease is terminated early by no fault of Lessee, the Lessee should be entitled to a prompt refund of all unearned, prepaid rental.

Ground Lease at ¶ 27.

The last provision of the Ground Lease identified by the parties as relevant to the present dispute is the following:

29. **Intent of Parties and Legal Counsel.** Lessor and [L]essee have carefully read and reviewed this Lease and each term and provision contained herein and, by execution of this Lease, show their informed and voluntary consent thereto, the parties hereby agree that, at the time this Lease is executed, the terms of this Lease are commercially reasonable and effectuate the intent and purpose of Lessor and Lessee with respect to the Premises. This Lease has been prepared for the Lessor and may be submitted by the Lessee to Lessee's attorney for approval. No representation or recommendation is made by the Lessor as to the legal sufficiency, legal effect, or tax consequences of this

Lease or the transaction relating thereto; the parties shall rely solely upon the advice of their own legal counsel as to the legal and tax consequences of this Lease.

Ground Lease at ¶ 29.

### 3. *Nam's attorney-client relationship with Quichocho*

As mentioned above, Quichocho did not know if Nam was represented by an attorney in the transaction involving the Ground Lease of the Premises, does not recall asking if he was, and certainly did not speak to any attorney representing Nam prior to execution of the Ground Lease. Nam contends that Quichocho has admitted that, because Quichocho drafted the Ground Lease for Nam, Nam might have assumed an attorney-client relationship existed between them.

There is no dispute that, on December 8, 2007, two days after Nam executed the Ground Lease and the day after Atalig executed it, Nam paid Quichocho $1,500.00 for Quichocho's professional services in drafting and filing Articles of Incorporation and By–Laws of Sin Ho Nam Corporation. Quichocho admits that there was an attorney-client relationship between him and Nam at that point, but asserts that the relationship began after the execution of the Ground Lease. On December 18, 2007, Nam paid Quichocho another $1,000.00 for representation of Nam on an immigration issue.

Eventually, on March 13, 2009, Quichocho sent Nam a "Privileged and Confidential Attorney–Client Communication," which Nam characterizes as asking whether Nam wished to terminate Quichocho's services. The body of the "Communication" states the following:

> This is to request that you return the One Thousand Eight Hundred Dollars ($1,800.00), that we reimbursed you for

office rent per our lease agreement, dated July 1, 2008, due to the fact that your girlfriend Jung Ja Kim misrepresented to us that she will be the one to pay since she occupied your office space with your consent.

> As you know, she moved out of your office space without paying a dime. According to Jung Ja, you gave her a Power of Attorney, and she claims that you have requested the return of all your documents and that SIN HO Development, Inc., and you are no longer my Clients. Although, I respect any Client's decision to terminate my services, I have to verify with you whether Jung Ja Kim's statements are true, since she lied on many occasions to me and others. Especially that she has not provided to me any copy of the Power of Attorney she claims.

> Please remit the payment to my office as soon as possible. I apologize for any inconvenience.

> If you should have any questions, please feel free to contact me. Thank you.

Declaration of Nam's Counsel (docket no. 30), Exhibits at 281 (Exhibit 10) (Bates Stamp 000038). Nam points out that this "Communication" shortly preceded the defendants' attempts to terminate his Ground Lease.

### 4. *Events leading to termination of the Lease*

On March 20, 2009, the defendants sent Nam, at the address listed in the Ground Lease, a "Notice of Default and Violations," stating the following:

> A recent site inspection of our property in Obyan, Saipan (aka Ladder Beach Property), which you are leasing, revealed that you have defaulted on certain provisions of the Ground Lease with us (1) by abandoning the property in violation of Section 21(c) of the Ground

Lease, (2) by failing to provide liability insurance in violation of Sections 10 and 21(e) of the Ground Lease, (3) by failing to provide fire and casualty insurance in violation of Sections 11 and 21(e) of the Ground Lease.

Therefore, you are hereby put on notice, pursuant to Sections 21, 22, and any other applicable provisions of the Ground Lease, that you have violated and defaulted on the Ground Lease. You are hereby given thirty (30) days from the date of this notice to cure the above-noted violations and default which may be cured. Failure to comply with this notice may result in the termination of the Ground Lease pursuant to Section 22(b), including the exercise of any and/or all remedies available to us.

Moreover, pursuant to Section 22(b) of the Ground Lease, you are hereby given sixty (60) days notice of termination, which will commence after the thirty days as set forth above, in the event that you fail to cure the default and violations of the Ground Lease.

Thank you for your anticipated cooperation. If you should have questions, please feel free to contact any of us.

Answer and Counterclaim, Exhibit 2 (Notice of Default).[6] This Notice of Default was signed by both Atalig and Quichocho. At the time that this Notice was sent, Nam was not on the island of Saipan, and he claims that he did not learn about it until April 27, 2009.

On April 19, 2009, thirty days after their first Notice, the defendants apparently determined that Nam had failed to cure any of the alleged defaults. However, on April 30, 2009, Nam, through counsel, did respond to the defendants. Answer and Counterclaim, Exhibit 3 (Nam's April 30, 2009, Letter). In his response, counsel asserted that Nam had just received the Notice upon his return to Saipan; that he had delivered to counsel "proof of Public Liability Insurance Coverage," but that he was "unable to acquire fire insurance because there are no improvements on the property at this time, [and] [he] was told by the insurance companies that a fire insurance policy will only be issued to insure a building." *Id.* at 1. Nam also asserted "that he has not abandoned the Leased property [and] showed [counsel] a topographical map that he commissioned and t[old] [counsel] that he wants to develop the property." *Id.* at 2. Counsel's letter concluded as follows:

Based on the foregoing, Mr. Nam is compliant with the terms of the Lease. It would seem inappropriate for you to take any further action to terminate his leasehold interest. If you disagree and intend to continue efforts to terminate Mr. Nam's Lease, please let me know the basis for such actions.

Finally, in the future, please include my office with a copy of any notice delivered to Mr. Nam under this Lease. Thank you for your attention to this matter. If you have any questions or concerns, please contact my office.

Nam's April 30, 2009, Letter at 2. Nam contends that, effective April 30, 2009, he had liability insurance in place as required under ¶ 10 of the Ground Lease. The defendants dispute the sufficiency of the liability insurance.

On May 21, 2009, the defendants responded to Nam's counsel's April 30, 2009,

---

**6.** Again, additional copies of this and other correspondence concerning the defendants' attempt to terminate the Ground Lease were attached to other filings. I find it simplest just to refer to the complete set of correspondence that is filed with the defendants' Answer and Counterclaim.

Letter, by letter from Quichocho, which stated the following:

> This is in response to your letter dated April 30, 2009. First, please direct all communications regarding this matter to me. I do represent Mr. Joaquin Q. Atalig.
>
> Second, you did not attach a copy of the Public Liability Insurance Coverage, which is your Exhibit A. Please forward a copy to me as soon as possible.
>
> Third, you mentioned a topographical map that Mr. Nam commissioned, but did not include that as an attachment. Please forward a copy of that to me, as well.
>
> Fourth, you are mistaken that your client is "compliant with the terms of the Lease." For your information, I do intend to continue efforts to terminate the Lease for failure to cure the default and violations stated in my previous letter, unless I receive the above-mentioned documents within 3 days, and Mr. Atalig and I are satisfied that the default and violations have been cured.
>
> If you should have any questions, please feel free to contact me. Thank you.

Answer and Counterclaim, Exhibit 4 (Defendants' May 21, 2009, Letter).

On May 25, 2009, Nam again responded, through counsel, to the defendants' claims of default. Answer and Counterclaim, Exhibit 5 (Nam's May 25, 2009, Letter). After summarizing portions of Defendants' May 21, 2009, Letter, Nam's counsel stated the following:

> As expressed in my April 30, 2009, letter to you, Mr. Nam has obtained Public Liability Insurance. My office confirms delivery of the Public Liability Insurance with my letter, but another copy is attached for your convenience. Fire insurance will not be issued unless and until a building is erected. This means that obtaining Fire Insurance is either

impracticable or impossible and may not serve as a basis for termination. Mr. Nam has not and does not intend to abandon the leased premises. You are welcome to inspect the topographical map at my office. Please contact me to arrange a time to view it if you wish. In sum, any default which may have existed was cured.

> It is my understanding that Mr. Nam leased the premises for 55 years from you and Mr. Atalig for a sum of Two Hundred Eighteen Thousand Seventy Nine [Dollars] ($218,079.00) which was paid in full. The lease contains an implied duty of good faith and fair dealing. Your duties to Mr. Nam are amplified by the fact that he is or was your client. If after reading this letter you continue to believe that you have the right to terminate the Lease, please let me know the basis for your position. I am hopeful that you will honor Mr. Nam's Leasehold rights.

Nam's May 25, 2009, Letter. Attached to Nam's May 25, 2009, Letter was a "POLICY DECLARATIONS" page for a "public liability" policy on the Premises. The "POLICY DECLARATIONS" page identifies the "Insured" as Sin Ho Nam. It describes the coverage as "[l]egal liability to third parties following an occurrence resulting in bodily injury and/or property damage," with $100,000 per person for bodily injury, $300,000 per accident, and $300,000 per accident for property damages, with a $600,000 aggregate or single limit, subject to a $2,500 deductible for each and every loss. *Id.* As the defendants also point out, the "POLICY DECLARATIONS" page indicates that the policy was issued only for the period "4/29/09 to 4/29/10." The "POLICY DECLARATIONS" page also lists various endorsements and exclusions, but with no indication of the details of those provisions.

Notwithstanding Nam's assertions that he had cured any default, and a lapse of over two months, on August 9, 2009, the defendants, by letter from Quichocho, sent Nam's counsel a "Notice of Termination" of the Ground Lease. Answer and Counterclaim, Exhibit 6 (Notice of Termination). The Notice of Termination was not sent to the Lessee's address identified in the Ground Lease. This Notice of Termination disputed Nam's contention that he had sent a copy of the Public Liability Insurance Policy with his May 25, 2009, Letter, because the defendants claimed to have received only a "POLICY DECLARATIONS" page. *Id.* at 1. It also asserted that Nam was still in violation of ¶ 10 of the Ground Lease, because "[t]he Policy Declaration only indicates that it is a "Public Liability," rather than a "comprehensive general liability insurance" policy. *Id.* Further, it asserted that the "POLICY DECLARATIONS" page was deficient, because it did not indicate that the Lessor had been named as "additional insured," it did not comply with the policy limits requirements of the Ground Lease, and it did not require that the Lessor be notified more than 30 days prior to any cancellation or termination of the policy. *Id.* at 2. The Notice of Termination also asserted that the Lessor's attorney "had not received a copy of the policy or policies or an acceptable certificate, and it has been more than thirty (30) days from the date the Policy Declaration was issued"; complained that Nam had not provided a copy of the topographical map, but instead "threw the burden back at me to arrange a time to go to your office to 'view' it," which defendants' counsel asserted made "clear that Mr. Nam has abandoned the properties"; and disputed Nam's contention that any default had been cured. *Id.* The Notice of Termination did not respond to Nam's assertions that obtaining fire insurance was impracticable or impossible. The

Notice of Termination concluded as follows:

> For your information, we do intend to continue efforts to terminate the Lease for failure to cure the default and violations stated here and in my previous letters. As such, PLEASE TAKE NOTICE THAT THE GROUND LEASE, FILE NO. 07–2664, IS HEREBY TERMINATED EFFECTIVE SIXTY (60) DAYS FROM THE DATE OF THIS LETTER.
>
> If you have any questions, please feel free to contact me. Thank you.

Notice of Termination at 2. The defendants assert that all the grounds for termination stated in the Notice of Termination were material and justified termination under the terms and conditions of the Ground Lease.

On August 11, 2009, Nam's counsel responded to the Notice of Termination by asking "whether you intend to sue Mr. Nam for possession of the leased property or whether you and Mr. Atalig are willing to work out a resolution to your claims of breach with Mr. Nam" and requested "any proposals for resolving your claims short of litigation." Answer and Counterclaim, Exhibit 7. The defendants responded on August 13, 2009, by letter from Quichocho, which stated, in pertinent part, the following:

> Unfortunately, I am unable to give you a definitive response because Mr. Atalig is still off-island and I haven't had a chance to sit down and discuss your question with him. Frankly, we had discussed an outright termination due to failure to cure, but, of course, we did not know whether Mr. Nam would be willing to make an offer of settlement.
>
> Therefore, I would suggest that you let me know your idea or proposal of settlement, if any, so that when Mr. Atalig

comes back, I will discuss it with him. Perhaps, we can all sit down and discuss this matter.

Answer and Counterclaim, Exhibit 8. On August 26, 2009, Nam's counsel sent defendants a copy of the entire Public Liability Insurance Policy. Answer and Counterclaim, Exhibit 9. None of the parties asserts that there were further settlement negotiations or other discussions of whether or not Nam could cure the alleged defaults under the Ground Lease. Instead, on October 13, 2009, the defendants filed a Termination of Ground Lease, signed by Atalig and Quichocho, with the Commonwealth Recorder, dated September 29, 2009, asserting an effective date for the termination of October 10, 2009. Answer and Counterclaim, Exhibit 10.

Nam asserts that the defendants have never insured the Premises, nor other real property owned by Quichocho on Saipan. The defendants assert that Nam abandoned the Premises and left them in a "total state of distress and waste for a prolonged period of time," Defendants' Memorandum In Support Of Motion For Summary Judgment (docket no. 32), Statement of Facts, ¶ 17, but do not detail the circumstances constituting "distress" or "waste." The parties agree that the defendants have not refunded any part of the rent that Nam paid under the Ground Lease.

### B. Procedural Background

### 1. Nam's Complaint

Nam filed the present lawsuit on March 29, 2010, and a *lis pendens* on the Premises on April 15, 2010. In his Complaint, Nam's First Claim For Relief is against defendant Quichocho for breach of fiduciary duty. It alleges that, as a result of

Quichocho's attorney-client relationship with Nam, a fiduciary relationship was created; that Quichocho breached that duty when he "committed the acts and omissions set forth above [in the Complaint]," which apparently include all of the actions detailed in the Factual Background, above; that Nam sustained damages as a result; and that Quichocho's breaches were "willful and in utter disregard of their [sic] responsibilities to Mr. Nam's rights at law," thus entitling Nam to punitive damages. Nam's Second Claim For Relief is against defendants Quichocho and Atalig for breach of the Lease. This cause of action asserts that Quichocho breached the express and implied terms of the Lease with Nam "through the conduct described above," but does not identify what conduct of defendant Atalig allegedly breached the Lease. It alleges that "[a]s a result of the Defendants' [sic] respective breaches of the Lease," Nam was damaged and that both Quichocho and Atalig are liable for all reasonably foreseeable damages resulting from their respective breaches. Nam's Third Claim For Relief is against both Quichocho and Atalig for restitution. It alleges that Nam paid the full rental price in exchange for the lease of the Premises for 55 years; that the defendants accepted the full payment of the rent; and that, under the circumstances, it would be unjust and inequitable to allow the defendants to terminate the Lease and "eliminate" all of Nam's rights without returning the full payment of the rent.[7] Thus, Nam asserts that he is entitled to "Restitution." Nam seeks judgment in his favor on his claims; contract, compensatory, and punitive damages; restoration of his possessory interest in the Premises or rescission of

7. Nam adds the apparently redundant allegation that to allow such an interpretation of the Lease—presumably, one that would allow the defendants to keep the entire rental pay- ment—would be unconscionable and to allow the defendants to keep possession of the Premises and the full rental payment would be unjust and inequitable.

**1164**

the Lease and return of the entire rental payment; pre- and post-judgment interest, costs, and reasonable attorney's fees; and such other relief as the court may deem just and proper under the circumstances.

## 2. The defendants' Answer And Counterclaim

The defendants filed an Answer And Counterclaim (docket no. 3) on June 1, 2010. In it, they deny Nam's claims, assert various affirmative defenses, and a counterclaim alleging five causes of action. Their First Cause of Action is for slander of title. It alleges that Nam filed or caused to be filed *lis pendens* that are invalid and without merit; that he did so with malicious intent to injure and disparage the defendants' title to the Premises and to interfere with their rights as owners of the Premises; that such action constitutes slander of title entitling the defendants to damages, punitive damages, and reasonable attorney's fees and costs; and that, as a direct and proximate consequence of Nam's conduct, the defendants have suffered damages and were forced to bring the present counterclaim to recover those damages and to declare their title, rights, and interests in the Premises, thereby incurring attorney's fees and costs. Because the defendants allege that Nam acted intentionally, maliciously, and with an evil mind, the defendants assert that punitive damages are justified. The defendants' Second Cause of Action is for breach of contract. It alleges that Nam breached the Ground Lease by failing to obtain and maintain comprehensive general liability insurance for the entire term of the Ground Lease as required by ¶ 10; by failing to obtain and maintain such insurance that complied fully with the requirements of ¶ 10; by failing to provide a copy of such insurance policy within thirty days of issuance of such policy as required by ¶ 10; by failing to obtain and maintain fire and casualty insurance for the entire term of the Ground Lease as required by ¶ 11; by abandoning the Premises; and by failing to maintain and by committing waste on the Premises. It alleges that such breaches have injured the defendants and entitle them to damages, attorney's fees, and costs. The defendants' Third Cause of Action is based on express contractual indemnity. It alleges that, pursuant to ¶ 12 of the Ground Lease, Nam agreed to indemnify and hold the defendants harmless and that, by way of this counterclaim, they are notifying him of his obligation to defend and indemnify them against any claims by any person, or any claims by government regulatory agencies, and any claims arising in the future regarding the property. The defendants' Fourth Cause of Action is for "waste." It alleges that, during his occupancy of the Premises, Nam committed waste upon the Premises by abandoning, neglecting, and allowing the Premises to be used as a dumping ground for garbage, directly and proximately causing the defendants damages, including, but not limited to, diminution in property values, loss of prospective economic advantages, and clean up costs. The defendants' Fifth Cause of Action is to quiet title. It realleges that Nam's filing of invalid and meritless *lis pendens* has injured and disparaged their title to the Premises, adding that, unless restrained by the court, such action will cause greater and further irreparable injury to their claims and interests in the Premises. They request an order requiring Nam to remove or withdraw his *lis pendens,* awarding them damages, and quieting title in their names as against Nam, and declaring that Nam has no interest in the Premises. Like Nam, the defendants seek general, punitive, and other damages, attorney's fees, and costs, on their First through Fourth Causes of Ac-

tion; attorney's fees and costs on their Fifth Cause of Action; actual damages, attorney's fees, and costs under a nonexistent Sixth Cause of Action; and an order directing Nam to remove or withdraw his *lis pendens* and awarding punitive damages, attorney's fees, and costs under an equally nonexistent Seventh Cause of Action. They also ask the court to declare that title to the Premises be vested in them and for such other and further relief as the court deems just and proper under the circumstances. Nam filed a Reply to the Counterclaim on July 17, 2010, denying the defendants' claims.

Pursuant to a Scheduling Order (docket no. 9), filed December 17, 2010, a jury trial in this action is set to begin on November 14, 2011.

### 3. The cross-motions for summary judgment

On July 25, 2011, Nam filed his Motion For Summary Judgment (docket no. 27), seeking summary judgment in his favor on his claims for breach of contract, restitution, and breach of fiduciary duty, and on the defendants' counterclaims for slander of title, breach of contract, breach of express contractual indemnity, waste, and quiet title. Nam supported his Motion For Summary Judgment with three Declarations (docket nos. 28, 29, 30), one from Stephen J. Nutting (docket no. 29). The defendants filed their Opposition To Nam's Motion For Summary Judgment And Motion To Strike The Declaration Of Stephen J. Nutting (docket no. 35) on August 11, 2011. On July 25, 2011, the defendants filed their own Motion For Summary Judgment (docket no. 32), seeking summary judgment in their favor on Nam's claims of breach of fiduciary duty, breach of contract, and restitution. Nam filed his Opposition To Defendants' Motion For Summary Judgment (docket no. 34) on August 11, 2011, and the defendants filed a Reply Brief In Support Of [Their] Motion For Summary Judgment (docket no. 39) on August 22, 2011.

I heard oral arguments on the cross-motions for summary judgment on August 25, 2011, during my third visit to Saipan as a visiting judge. At the oral arguments, plaintiff Nam was represented by Colin M. Thompson of the Thompson Law Office, L.L.C., in Saipan, and defendants Quichocho and Atalig were represented by Michael W. Dotts of O'Connor, Berman, Dotts & Banes in Saipan.

These motions are now fully submitted.

## II. THE DEFENDANTS' MOTION TO STRIKE DECLARATION

With—indeed, as part of—their Opposition (docket no. 35) to Nam's Motion For Summary Judgment, the defendants moved to strike the Declaration of Stephen Nutting (docket no. 29), which Nam had offered in support of his Motion For Summary Judgment. That Declaration is devoted primarily to allegations concerning allegedly similar conduct of Quichocho and Atalig relating to other properties. The extent of any written argument in support of the defendants' Motion To Strike is that Mr. Nutting's Declaration is "improper opinion testimony of an unrelated case with different facts and parties" and that it is "scandalous, immaterial and impertinent." The motion cites no authority for a motion to strike a declaration offered in support of a motion for summary judgment. Nam filed neither a reply in support of his own Motion For Summary Judgment addressing the Motion to Strike the Declaration of Stephen Nutting nor any separate resistance to that motion.

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scan-

dalous matter. Under Rule 7(a) of the Federal Rules of Civil Procedure, the only "pleadings" allowed are the following: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." *Id.* Here, defendants are not seeking to strike matter from a pleading, but, instead, are attempting to strike a declaration offered in support of Nam's Motion for Summary Judgment. As a result, the defendants' Motion to Strike is improper under Rule 12(f) of the Federal Rules of Civil Procedure, and, consequently, is denied. I need not consider whether it is necessary or appropriate to strike the Declaration of Stephen Nutting pursuant to some other authority, because no other authority has been cited and, just as importantly, I find that it is simply unnecessary to consult that Declaration with respect to any claim or counterclaim at issue in the cross-motions for summary judgment.

### III. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

#### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and ... dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 585, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses....."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c) (emphasis added); *see also Community House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 959 (9th Cir. 2010) (quoting Rule 56(c)). A fact is *material* when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "the substantive law will identify which facts are material." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Campbell v. PricewaterhouseCoopers, L.L.P.,* 642 F.3d 820, 824–25 (9th Cir.2011) ("[S]ummary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine questions of material fact and the district court correctly applied the underlying substantive law."). An issue of material fact is *genuine* if it has a real basis in the record, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The Ninth Circuit Court of Appeals has described the burdens borne by each party on a motion for summary judgment, as follows:

> We are mindful of the shifting burden of proof governing motions for summary judgment under Federal Rule of Civil Procedure 56. The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there

is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S.Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. 2505.

*In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir.2010).

The Ninth Circuit Court of Appeals reviews *de novo* a district court's decision on cross-motions for summary judgment. *Campbell,* 642 F.3d at 824.

I will apply these standards to the parties' cross-motions for summary judgment on Nam's claims, then to Nam's motion for summary judgment on the defendants' counterclaims.

### B. The Plaintiff's Claims

Nam asserts claims of breach of fiduciary duty, breach of contract, and restitu-tion. The parties have filed cross-motions concerning all three of these claims. Because I find that the question of which party breached the Ground Lease is the central dispute in this litigation, I will begin my analysis with Nam's breach-of-contract claim, resolving, in the process, Nam's motion for summary judgment on the defendants' breach-of-contract counter-claim.

### 1. Breach of contract

#### a. Arguments of the parties

***i. Nam's arguments.*** In support of his motion for summary judgment on his breach-of-contract claim, Nam argues that a breach occurs upon the nonperformance of a contractual duty of immediate performance. He contends that the defendants breached the express contractual duty to provide him with quiet enjoyment of the Premises in ¶ 6 of the Ground Lease when they wrongfully terminated the Ground Lease.

Nam also contends that any argument that the defendants' termination of the Ground Lease was justified should fail.[8] More specifically, he notes that the defendants' March 20, 2009, Notice of Default listed three grounds for termination: (1) abandonment; (2) failure to obtain fire insurance; and (3) failure to obtain general liability insurance. He denies that he abandoned the property, because he prepaid rent for the entire 55–year period and there is no "overt act" demonstrating discontinued use. He asserts that nonuse alone does not constitute abandonment. He contends that he did not breach the clause concerning fire insurance, because the clause only gave rise to a duty to insure *improvements erected on*

---

8. This argument necessarily encompasses his argument for summary judgment on the defendants' counterclaim for breach of contract, which asserts precisely these justifications for terminating the Ground Lease as the breaches by Nam of the Ground Lease.

*the Premises.* He asserts that, because no improvements had been erected, no performance was due when the defendants asserted a default of this provision. He also argues that he was unable to obtain fire insurance on unimproved land, so that his performance was impracticable or impossible and, thus, excused, while such impracticability lasted. Finally, he argues that he did not breach the general liability insurance clause, either, because that provision states no time at or by which he was required to obtain such insurance. He contends that his performance was not due under this clause when the defendants notified him of the alleged default, because that clause should also be construed to require insurance only once improvements were constructed. He points out that the defendants never before insured the Premises. He argues that, even if his performance was immediately due under the general liability insurance clause, he performed or substantially performed that obligation, because he obtained liability insurance after learning that the defendants considered him in default. He contends that it would be unconscionable to terminate the Ground Lease on the basis of a slight delay in obtaining satisfactory insurance, when he was off-island at the time of the Notice of Default and during the entire cure period. He also argues that the defendants suffered no harm because of the delay.

Nam also argues that the defendants breached the contractual duty to reimburse him for prepaid rent under ¶ 27(n) of the Ground Lease, where they wrongfully terminated his lease. He argues that he is entitled to prorated reimbursement of $210,073.00. Nam also argues that the defendants breached the implied duty of good faith and fair dealing by wrongfully terminating the Ground Lease. He contends that this is so, because the defendants made no efforts to assist him in the

cure of the purported default, refused to acknowledge his good faith effort to obtain insurance, and simply focused on terminating the Ground Lease. He contends that the defendants knew that they were not required to terminate the Ground Lease, took an unsupportable legal position on abandonment, and did not seek judicial termination of the Ground Lease.

For essentially the same reasons that Nam contends that the defendants' termination of the Ground Lease was not justified, Nam argues that he is entitled to summary judgment on the defendants' breach-of-contract counterclaim.

***ii. The defendants' arguments.*** In contrast, the defendants contend that Nam failed to perform the Ground Lease and that he has no excuse. They contend that Nam may have procured a form of liability insurance for the period April 29, 2009, to April 29, 2010, but he has never shown proof of such insurance for the period December 6, 2007, to April 28, 2009. They contend that Nam never procured fire insurance. They contend that Nam's failure to cure these defaults, even when he was given a chance to do so, demonstrates that Nam breached the Ground Lease. They also argue that they "discovered" that Nam had abandoned the leased Premises, and after they gave proper notice to that effect, Nam further manifested his clear abandonment of the property when, through counsel, he refused and continued to refuse to provide the "topographical survey" that he had purportedly commissioned.

The defendants also argue that they did not breach the Ground Lease, because they followed the notice provisions of the Ground Lease before termination. They point out that Nam has never requested that the defendants perform any promise that they allegedly breached, and that he

cannot assert a breach of quiet enjoyment, because he breached the express terms of the Ground Lease. They contend that Nam's contractual right of quiet possession was contingent on his observing and keeping all covenants, conditions, and terms of the Ground Lease, but he failed to meet those conditions. They also contend that Nam's "impracticability" defense as to the required fire insurance fails, because Nam provided no evidence from any insurance company that no insurance company is willing to sell him fire and casualty insurance for the leased Premises. They also assert that the purported liability insurance policy that Nam obtained was not just too late, but failed to comply with several specific requirements for such insurance: that the Lease includes a "time is of the essence" clause, so that Nam could not wait to get such insurance until a default was noticed; that Nam provided no insurance from December 6, 2007, to April 28, 2009; that Nam did not provide any copy of the policy until August 27, 2009; and that the policy eventually obtained did not conform to the contractual requirements. They also contend that Nam is not entitled to prorated return of prepaid rent, because the early termination of the Ground Lease was due to his breaches. They also argue that they did not violate the covenant of good faith and fair dealing, because they were not obligated to take Nam by the hand to help him cure his default, and judicial termination of the Ground Lease was not required. They contend that any damages that Nam has suffered arise from his own breach of the Ground Lease, not theirs.

#### b. Analysis

**■ i. Principles of contract law.** As noted above, summary judgment must be considered in the context of applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Campbell*, 642 F.3d at 824–25. Breach of a contract occurs upon the nonperformance of a contractual duty of immediate performance. *Del Rosario v. Camacho*, 2001 MP 3 ¶ 96, 6 N.M.I. 213, 231. On the other hand, if the nonperformance of a contractual duty is justifiable, then there is no breach. *Id.* More specifically,

> "[W]hen performance of a duty under a contract is due any non-performance is a breach. *Reyes v. Ebeteur* [*Ebetuer* ], 2 N.M.I. 418, 429 (1992) (citing Restatement (Second) of Contracts § 235(2) (1981)). Once a party materially breaches a contract, that party cannot insist on the second party's performance of the same contract. *Windward Partners v. Lopes,* [3 Haw.App. 30], 640 P.2d 872, 874 (Haw.Ct.App.1982). The material breach of an "entire" contract by one party justifies termination by the nonbreaching party. See 1 B. Witkin, Summary of California Law § 804 (9th ed. 1987)."

*Triple J. Saipan, Inc. v. Agulto,* 2002 WL 32983884, *2 (N.Mar.I. May 22, 2002). Under a lease contract, if a party defaults, and fails to cure, then the other party may properly terminate the lease. *Cabrera v. Young,* 6 N.M.I. 330, 334, 2001 WL 34883553, *4 (N.Mar.I.2001)

■ As the Commonwealth Supreme Court has explained,

> The "interpretation of a contract and the determination as to its breach are a mixed question of fact and law." *L.K. Comstock & Co. v. United Eng'rs & Constructors, Inc.,* 880 F.2d 219, 221 (9th Cir.1989) (quoting *Libby, McNeill, and Libby v. City Nat'l Bank,* 592 F.2d 504, 512 (9th Cir.1978)). "In general, factual findings as to what the parties said or did are reviewed under the 'clearly erroneous' standard while principles of contract interpretation applied to the facts are reviewed de novo." *Id.*;

*Camacho v. L & T Int'l Corp.,* 4 N.M.I. 323, 326 (1996) (On appeal, NMI Supreme Court reviews "application of contract law under the de novo standard, and any finding based on extrinsic evidence under the clear error standard.") *Manglona v. Government of the Commonwealth of the Northern Mariana Islands,* 2005 WL 3771373, *3 (N.Mar.I. Oct. 4, 2005). As to the rules of interpretation, the Commonwealth Supreme Court has explained,

> A written lease is a contract, subject to the same rules of construction as contracts. *Camacho v. L & T Int'l Corp.,* 4 N.M.I. 323, 325–26 (1996). Where the language of a writing is plain and precise, the court can, as a matter of law, establish the parties' intent from the writing. *Ada v. K. Sadhwani's Inc.,* 3 N.M.I. 303, 310 (1992); *see also Sablan Enterprises v. New Century, Inc.,* 1997 MP 32, 5 N.M.I. 144.

*Cabrera,* 6 N.M.I. 330 at 333, 2001 WL 34883553 at *3. Also, "the preference in interpretation of contracts is that 'specific terms and exact terms are given greater weight than general language.'" *Id.* at 334, 2001 WL 34883553 at *4 (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 203(c) (1981)).

***ii. Who breached?*** Each side contends that the other breached the Ground Lease as a matter of law. Nam contends, first, that the defendants breached the contractual duty to provide him with quiet enjoyment of the Premises. Paragraph 6 of the Ground Lease, which is set out in full, above, did provide Nam with a right to quiet enjoyment, which would necessarily be breached by a wrongful early termination. However, according to the plain terms of that provision, *Cabrera,* 6 N.M.I. 330 at 333, 2001 WL 34883553 at *3 (noting that, "[w]here the language of a writing is plain and precise, the court can, as a

matter of law, establish the parties' intent from the writing"), Nam's right to quiet enjoyment was contingent "upon paying the rent and other charges herein provided for and observing and keeping all the covenants, conditions, and terms of this Lease on Lessee's part." Ground Lease at ¶ 6. Similarly, while ¶ 27(n), also set out in full above, plainly states that, "[i]n the event that this Lease is terminated early *by no fault of Lessee,* the Lessee should be entitled to a prompt refund of all unearned, prepaid rental," Ground Lease at ¶ 27(n) (emphasis added), and the early termination of the Ground Lease without prompt refund of prorated rent could breach this provision, this provision is also expressly conditioned on the early termination being "by no fault of the Lessee." The same is true of Nam's claim that the defendants breached the covenant of good faith and fair dealing, which is implied in every contract. *See, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 205 & cmt. *a* (1981) (every contract imposes a duty of good faith and fair dealing on the parties, and when a party acts in bad faith they breach the covenant and become liable for that breach); *Del Rosario,* 2001 MP 3 at ¶ 96, 6 N.M.I. at 231. "[T]his implied covenant only requires that one party not injure another party's right to receive the benefits of the agreement," *id.,* so if a party has forfeited the right to receive the benefits of the agreement by its own breach, it cannot rely on the other party's supposed breach of the covenant of good faith and fair dealing. Moreover, if the termination of the Ground Lease was properly based on Nam's breach of the contract and properly conducted according to the terms of the Ground Lease, then it was not in bad faith. Thus, each of Nam's claims that the defendants breached the Ground Lease turns on whether or not Nam first breached the Ground Lease, as the defendants claim. *Del Rosario,* 2001

MP 3 at ¶ 96, 6 N.M.I. at 231 (stating that, if the nonperformance of a contractual duty is justifiable, then there is no breach).

■ The defendants claim that Nam breached the Ground Lease by "abandoning" the Premises. Abandoning the Premises is a form of default expressly recognized in ¶ 21(c) of the Ground Lease. Comment *i* to § 12.1 the RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT) states, "Abandonment of the leased property by the tenant occurs when he vacates the leased property without justification and without any present intention of returning and he defaults in the payment of the rent." [9] As the movants for summary judgment on this claim, the defendants have failed to demonstrate that there is no genuine dispute that Nam "abandoned" the Premises, and as the non-movants resisting Nam's motion for summary judgment on this claim, the defendants have failed to demonstrate that there *are* genuine issues of material fact that Nam "abandoned" the Premises. *See In re Oracle Corp. Sec. Litig.,* 627 F.3d at 387 (describing the parties' burdens on summary judgment).

First, and foremost, the requirement to show that the lessee (Nam) has stopped paying rent to demonstrate abandonment is missing here, where it is undisputed that Nam prepaid the rent for the entirety of the 55–year lease term. *See* RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT), § 12.1. cmt. *i* (stating that abandonment requires that the tenant "default in the payment of the rent"). Moreover, the defendants have pointed to nothing demonstrating that Nam had "vacated" the leased property or that he had no present intention of returning. *Id.* The defendants

assert that they "discovered" that Nam had abandoned the Premises, but identify no facts or circumstances from which they could have drawn the inference that he had done so. The Ground Lease did not require Nam to occupy, improve, build on, or do *anything* with the Premises during his tenancy. It simply permitted him to "use, improve, and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee shall not commit waste." Ground Lease at ¶ 2. As a matter of law, Nam's failure to provide the defendants with the topographical survey or map that he had commissioned did not constitute "abandonment," because he was not required by the Ground Lease to prepare such a survey or map or to share it with the defendants, and his counsel's offer to make the map available at his office for the defendants' review, rather than providing them with a copy, was, consequently, entirely reasonable. Indeed, the defendants' utter lack of support for their "abandonment" claim suggests (for now, I stop just short of saying "proves") that this ground for asserting that Nam had defaulted under the Ground Lease and that the Lease was, therefore, subject to termination, was in bad faith.

The defendants' assertion that Nam defaulted under the Ground Lease by failing to obtain fire insurance is equally insufficient. While the defendants assert that ¶ 11 of the Ground Lease required Nam to obtain fire insurance for the Premises for the *entire term* of the Lease, the pertinent provision plainly and precisely says no such thing. *Cabrera,* 6 N.M.I. 330 at 333, 2001 WL 34883553 at *3 (noting that, "[w]here the language of a writing is plain and precise, the court can, as a matter of

---

9. In the Commonwealth of the Northern Mariana Islands, the common law is drawn from the Restatements. 7 CMC § 3401; *Castro v. Hotel Nikko Saipan,* 4 N.M.I. 268, 272, n. 5

(1995) ("In the absence of contrary statutory or customary law this Court applies the common law as expressed in the Restatements."), *appeal dismissed,* 96 F.3d 1259 (9th Cir.1996).

law, establish the parties' intent from the writing"). Instead, it required Nam to "keep *all improvements* created on the Premises insured against loss or damage by fire or other casualty." Ground Lease at ¶ 11 (emphasis added). Where the parties agree that there were no improvements on the Premises, and the Ground Lease did not require Nam to make any, there was simply no contractual duty of immediate performance that Nam ever breached. *Del Rosario*, 2001 MP 3 at ¶ 96, 6 N.M.I. at 231. The defendants cannot rely on a general "time is of the essence" clause to impose a duty to provide fire insurance for the entire term of the Ground Lease, when the specific clause requiring such insurance imposes that duty only when improvements are on the Premises, and none were present at any time prior to the defendants' termination of Nam's Lease. *Cabrera*, 6 N.M.I. 330 at 334, 2001 WL 34883553 at *4 (stating, "[T]he preference in interpretation of contracts is that 'specific terms and exact terms are given greater weight than general language'") (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 203(c) (1981)). Again, the defendants' utter lack of support for their "fire insurance default" claim suggests (again, for now, I stop just short of saying "proves") that this ground for asserting that Nam had defaulted under the Ground Lease and that the Lease was, therefore, subject to termination, was in bad faith.

Thus, the defendants' assertion that they were entitled to terminate the Ground Lease because of Nam's breach rides exclusively on the sufficiency of their argument that Nam defaulted by failing to obtain "comprehensive general liability insurance" on the Premises pursuant to ¶ 10 of the Ground Lease. The defendants' contention that Nam simply had no liability insurance of any kind from December 6, 2007, to April 28, 2009, is a red herring, because the Ground Lease required notice of default and an opportunity to cure, before the Ground Lease could be terminated. *See* Ground Lease at ¶¶ 21 & 22. It was not until and unless Nam failed to cure this alleged default that the defendants had a right to declare a breach and terminate the Ground Lease; in other words, under the terms of the Ground Lease, it is not the default that constitutes a breach permitting termination, but a breach that is not timely and adequately cured that permits termination. *See also Cabrera*, 6 N.M.I. at 334, 2001 WL 34883553 at *4 (stating that, under a lease contract, if a party defaults, and fails to cure, then the other party may properly terminate the lease).

There is no dispute that Nam did not cure the alleged breach of the "liability insurance" provision within the initial thirty-day period, from March 20, 2009, to April 19, 2009. However, the defendants at least arguably waived the initial deadline to cure by giving Nam a further three days after the Defendants' May 21, 2009, Letter, to demonstrate the sufficiency of the liability insurance coverage. The Ground Lease did not necessarily require Nam to provide more than the "POLICY DECLARATIONS" page, because it states that Nam must provide the Lessor with "[a] copy of such policy or policies *or an acceptable certificate* . . . ." Ground Lease at ¶ 10 (emphasis added). Nam provided an arguably "acceptable certificate" on April 30, 2009, and a copy of the liability insurance policy on May 25, 2009. Thus, there is some support in the record for Nam's argument that he had at least substantially complied with ¶ 10 of the Ground Lease by the last deadline set by the defendants.

The question of whether Nam breached ¶ 10 ultimately turns on whether the liability insurance policy was so inadequate or

non-compliant with the requirements of the Ground Lease that it constituted a material breach. *See Triple J Saipan, Inc.*, 2002 WL 32983884 at *2 ("The material breach of an 'entire' contract by one party justifies termination by the non-breaching party."). The determination of whether a breach is "material" is determined by considering the five factors stated in RESTATEMENT (SECOND) OF CONTRACTS § 241:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Weighing on Nam's side, the record generates genuine issues of material fact that Nam would suffer a forfeiture, if he failed to perform; there was every likelihood that he would offer to perform and cure his alleged default, because he continued to try to obtain liability insurance and to satisfy the defendants as to its adequacy; and Nam acted in good faith in doing so, for example, by providing requested documentation. RESTATEMENT (SECOND) OF CONTRACTS § 241 (factors (c) through (e)).

There are also questions about the extent to which the other factors weigh in the defendants' favor. First, the terms of the liability insurance policy were not, in fact, the primary object of ¶ 10 of the Ground Lease. Rather, that provision required, in the first instance, that Nam "save and keep harmless Lessor from any loss, cost, damage, or expense arising out of any accident or other occurrence, causing injury to any person or property, and due directly or indirectly to the use or occupancy of the demised premises by Lessee." It was only "[i]n connection therewith" that Nam was required to obtain liability insurance with certain terms and conditions.

Moreover, some of the defendants' complaints about the adequacy of the liability insurance could reasonably be found by a jury to be "nitpicky." Although the defendants assert that the deductible provision and other coverage exclusions or limitations in the policy were unacceptable, because they contend that Nam was required to insure the Lessor against "*any*" loss, cost, damage, or expense arising out of any accident or other occurrence, causing injury to any person or property, and due directly or indirectly to the use or occupancy of the demised premises by Lessee," that is not what the Ground Lease says. There is no requirement in ¶ 10 of the Ground Lease that the liability insurance policy have any particular deductible or none at all, or have or not have any particular exclusions or limitations. Again, it is not the insurance policy that ultimately must protect the Lessor for "any" loss, it is the Lessee, Nam, who must protect the Lessor from any loss, and the insurance policy is just "[i]n connection with" fulfilling that obligation. In a similar vein is the defendants' contention that the policy was inadequate, because it was only issued for the period "4/29/09 to 4/29/10," not for the entire term of the Ground Lease. Again, nothing in the Ground Lease required that the insurance policy cover the entire term of the lease, or continue from the date of

issuance until the end of the term of the lease. Annual terms for insurance policies are standard, and as long as the policy was timely renewed, there would be no lapse in coverage. Again, Nam's obligation was to protect the Lessor from "any" loss, not to have an insurance policy to do that for the entire term of the Ground Lease. It is true that the liability insurance policy that Nam obtained did not meet some of the specific requirements stated in ¶ 10, for example, concerning advance notice to the Lessor of cancellation or termination, and identification of the Lessor as an "additional insured." However, the record does not demonstrate that Nam could not or would not attempt to cure such deficiencies, where his interest in the Premises was long term. *See* RESTATEMENT (SECOND) OF CONTRACTS § 241(d).

What leads me to the conclusion that Nam is entitled to summary judgment on his breach-of-contract claim, while the defendants are not (and, hence, why Nam is also entitled to summary judgment on the defendants' breach-of-contract claim), is that the breach of the insurance policy provisions of ¶ 10 cannot, as a matter of law, be construed to be a breach of the "entire" contract by Nam that justifies termination by the defendants. *Triple J Saipan, Inc.*, 2002 WL 32983884 at *2. Again, Nam's failure to provide a compliant liability insurance policy was not the object of the contract or even the object of ¶ 10. The object of ¶ 10 was that Nam protect the Lessor from "any" loss, and a compliant liability insurance policy was only "[i]n connection with" that obligation, not the entirety of that obligation. The object of the parties' bargain was a long term lease on the Premises for an agreed rent. Neither the object of ¶ 10 nor the object of the Ground Lease as a whole was defeated by curable insufficiencies in the liability insurance policy.

Nam is entitled to summary judgment on his breach-of-contract claim. While I note Nam's suggestion that his damages are, at least, the prorated rent for the period of the Ground Lease after he was terminated, I find that jury questions on the damages for breach of contract remain.

### 2. Restitution

#### a. Arguments of the parties

Nam's argument for summary judgment on his restitution claim is more succinct: He contends that the defendants conveyed no benefit on him that could justify the receipt of over $218,000, when they sought to terminate his 55–year lease after less than two years and when they have not returned any of the rent to him. Thus, he argues that he is entitled to prorated restitution of prepaid rent in the amount of $210,073.00 in order to avoid unjust enrichment of the defendants at his expense. Nam also contends that his express contract and his breach-of-contract claim are not bars to his restitution claim, because restitution claims remain of great practical significance at the margins of contractual disputes, when a valuable performance has been made under a contract that is invalid, subject to avoidance, or otherwise ineffective to regulate the parties' obligations. Here, he contends that the defendants deliberately breached the contract by terminating the Ground Lease and made substantial gains at his expense by failing to refund any prepaid rent. He also contends that, even if the court finds that he breached the Ground Lease, restitution is still warranted, because the benefit he conferred on the defendants is disproportionate to the rent that they would be due for the period before they terminated the Ground Lease.

The defendants contend that Nam's restitution or unjust enrichment claim fails as a matter of law, because, interpreted ei-

ther way, such a quasi-contractual action is precluded where there was an express contract between the parties on the same subject matter. They argue that the fact that Nam's breach-of-contract claim has no merit does not establish his right to assert an equitable claim for unjust enrichment.

### b. Analysis

Again, summary judgment must be considered in the context of applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Campbell*, 642 F.3d at 824–25. As to this claim, I have not found, and Nam does not assert that there is, any authority under Commonwealth law for the proposition that a "restitution" claim can be a companion claim to a breach-of-contract claim in the circumstances presented here. *But see Camacho v. L & T Int'l Corp.*, 1996 WL 33364550, *3 n. 1 (N.M.I. Feb. 9, 1996) (citing authority that a restitution claim for value of improvements does not apply to improvements on leased land voluntarily made by a lessee); *id.* *5 (recognizing a "restitution" claim for rent due from a tenant during a "holdover" period after the lease had expired). On the other hand, it seems likely to me that the Commonwealth would adopt the well-settled rule that a quasi-contractual claim for "restitution" or "unjust enrichment" will not lie where there exists a valid express contract between the parties covering the same subject matter. *See, e.g., Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir.1996) (recognizing that a claim for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties"). I also am not convinced that the Commonwealth would recognize a "restitution" claim for damages in lieu of breach-of-contract damages in the circumstances presented here, because Nam has not shown that the express contract was "procured by fraud or is unen-

forceable or ineffective for some reason." *See, e.g., McBride v. Boughton*, 123 Cal. App.4th 379, 387, 20 Cal.Rptr.3d 115 (2004). The Ground Lease was not "ineffective," the defendants simply breached it. In any event, because I find that Nam is entitled to summary judgment on his breach-of-contract claim, leaving only the question of damages on that claim, Nam's "restitution" claim is surplusage.

Nam is not entitled to summary judgment on his "restitution" claim, and the defendants are entitled to summary judgment on this claim.

### 3. Nam's breach-of-fiduciary-duty claim

Nam's third claim is for breach of fiduciary duty against Quichocho only. Both Nam and the defendants have moved for summary judgment on this claim.

#### a. Arguments of the parties

*i. Nam's arguments.* Nam claims that Quichocho was his attorney from December 2007 and that he paid Quichocho for legal services. Nam argues that he relied on Quichocho to draft the Ground Lease and that Quichocho has admitted that, under the circumstances of his drafting and explaining the Ground Lease to Nam, Nam might think that he was representing Nam. Nam notes that Quichocho did not notify him, in writing or otherwise, that he was not representing Nam when he wrote the Ground Lease. Nam also argues that he relied on Quichocho, because he was new to Saipan, unfamiliar with real estate law there, did not speak English, and could not read the Ground Lease in English. Nam argues that the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 authorizes a cause of action for a lawyer's breach of fiduciary duty, if the breach caused the client injury. Here, Nam argues that Quichocho had a duty to avoid an impermissible conflict of

interest and breached that duty by not dealing honestly in the Ground Lease transaction and by inserting provisions with "hidden meanings" into the Ground Lease, knowing that he was at an advantage, because he was drafting the Ground Lease, drafting it in English for a non-English speaker, and was an attorney. Nam also contends that Quichocho did not deal honestly with him in the way that the Ground Lease was terminated.

***ii. The defendants' arguments.*** The defendants argue that the breach-of-fiduciary-duty claim actually relies on Mr. Ha's representations about Quichocho. They argue that there is absolutely no evidence that Mr. Ha ever was an agent of Quichocho, or that Quichocho was the one who told Mr. Ha to tell Nam that if Nam worked with Quichocho about dealing with the Ground Lease and getting a visa and "everything," there "won't be any problem." Thus, the defendants assert that Nam thought Quichocho was his attorney because of what Mr. Ha said, not because of anything Quichocho said or did. The defendants dispute that there was an attorney-client relationship between Nam and Quichocho until after the Ground Lease was executed, because Nam cites no evidence demonstrating that there was a reasonable basis for his belief that such a relationship existed until after the Ground Lease was executed. On the contrary, the defendants assert that Nam's allegations, assuming them to be true, suggest only a distorted impression on Nam's part of such a relationship, while the circumstances described actually suggest contact between a lessor-owner and a lessee, where the owner was only incidentally a lawyer. The defendants also contend that the Ground Lease, itself, demonstrates that there was no attorney-client relationship between Quichocho and Nam when it was discussed and executed, because ¶ 29 is very clear that each party is entitled to have his own

attorney review and approve the terms of the Ground Lease and states that the parties "shall rely solely upon the advice of their own legal counsel as to the legal ... consequence of [the] Lease."

Even if there was an attorney-client relationship, the defendants contend that Quichocho complied with Rule 1.8(a) of the Model Rules of Professional Conduct, concerning business transactions with a client. Specifically, they argue that the terms of the Ground Lease were fair and reasonable and fully disclosed; that the Ground Lease was prepared by the Lessor's counsel, but the Lessee was free to seek his own legal advice; and that Nam signed the Ground Lease and initialed every page.

The defendants also argue that there is absolutely no factual basis for the punitive damages claim on this cause of action. They argue, first, that Nam's claim in chief for breach of fiduciary duty, upon which the relief for punitive damages is based, is grossly unmeritorious, and, second, that Nam's claim for punitive damages is conclusory and lacks factual allegations to support any contention of malicious, oppressive, or willful conduct.

#### b. Analysis

Looking first to applicable substantive law, *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Campbell*, 642 F.3d at 824–25, I note that the Commonwealth Supreme Court has recognized that "[a]n attorney who fails to perform professional duties resulting in actual loss to the client is liable for the damages sustained." *Bank of Saipan v. Carlsmith Ball Wichman Case & Ichiki*, 1999 WL 33992414, *1, 6 N.M.I. 40, 42 (N.Mar.I.1999). This rule shoots a bit wide of the mark here, because Nam does not assert that Quichocho failed to perform professional duties, but that he breached his fiduciary duties in the way that he performed those duties—if, indeed, Qui-

chocho was his attorney in the Ground Lease transaction. Much nearer the mark, and the authority on which Nam actually relies, is RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49, which provides as follows:

> In addition to the other possible bases of civil liability described in §§ 48, 55, and 56, a lawyer is civilly liable to a client if the lawyer breaches a fiduciary duty to the client set forth in § 16(3) and if that failure is a legal cause of injury within the meaning of § 53, unless the lawyer has a defense within the meaning of § 54.

Section 16(3) provides, in turn, that "[t]o the extent consistent with the lawyer's other legal duties and subject to the other provisions of this Restatement, a lawyer must, in matters within the scope of the representation ... comply with obligations concerning the client's confidences and property, avoid impermissible conflicting interests, deal honestly with the client, and not employ advantages arising from the client-lawyer relationship in a manner adverse to the client." Thus, courts have formulated the elements of a claim of legal malpractice based on breach of fiduciary duty as follows: (1) there was an attorney-client relationship between the plaintiff and the defendant attorney; (2) the defendant attorney breached the attorney's fiduciary duty to the client; (3) the breach both actually and proximately caused the client injury; and (4) damages suffered by the client. *See, e.g., Cecala v. Newman,* 532 F.Supp.2d 1118, 1135 (D.Ariz.2007) (citing *Kilpatrick v. Wiley, Rein & Fielding,* 909 P.2d 1283, 1290–93 (Utah Ct.App. 1996), 2 LEGAL MALPRACTICE § 14:2 at 589, and RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. e (2000) ("[T]he rules concerning causation, damages, and defenses that apply to lawyer negligence actions also govern actions for breach of fiduciary duty.")).

■ It is clear from these formulations of the lawyer's fiduciary duty that an attorney-client relationship is an essential element of a claim for malpractice based on breach of fiduciary duty. Circumstances in which such a relationship arises are the following:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
>
> > (a) the lawyer manifests to the person consent to do so; or
> >
> > (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or
>
> (2) a tribunal with power to do so appoints the lawyer to provide the services.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14. Contrary to the defendants' contentions, I believe that a reasonable juror could find from the evidence adduced by Nam that he did have an attorney-client relationship with Quichocho with regard to the Ground Lease, although I do not believe that Nam has shown this beyond dispute. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Nam at least arguably manifested to Quichocho that he was requesting that Quichocho provide legal services for him by asking him to draft the Ground Lease, and just as importantly, Quichocho did not manifest a lack of consent to do so. Indeed, a reasonable jury could find that, at least under circumstances involving a foreign national who did not speak English, was not familiar with Commonwealth law, and who sought or at least received an explanation of the terms of the Ground Lease drafted by the attorney, that the attorney reasonably should have known that the person was relying on him to provide services. Con-

trary to the defendants' contentions, while ¶ 29 of the Ground Lease might make clear to reasonably sophisticated English speakers that the attorney did not represent the Lessee, it does not necessarily make Nam's reliance on Quichocho as his attorney unreasonable. Neither party is entitled to summary judgment on this element of the claim.

Nor is it beyond dispute that Quichocho did or did not breach his fiduciary duty in this business transaction with Nam, if Nam was, indeed, his client. While the defendants rely heavily on Quichocho's purported compliance with Rule 1.8(a) of the Model Rules of Professional Conduct, I believe that a reasonable jury could find to the contrary. That Rule provides as follows:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
>
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
>
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

More specifically, I believe that genuine issues of material fact obtain as to requirement (1), in that it is not beyond dispute that Quichocho fully disclosed and transmitted the terms of the transaction "in a manner that can be reasonably understood by [Nam]"; as to requirement (2), I have already opined that ¶ 29 of the Ground Lease attempts to fulfill this requirement, but again, under the circumstances, it is not clear that Nam reasonably understood the provision; and as to requirement (3), the greatest uncertainty is whether Nam gave informed consent not just to the terms of the transaction, but to Quichocho's "role in the transaction, including whether the lawyer is representing the client in the transaction."

Therefore, I find that neither party is entitled to summary judgment on this claim.

### 4. Summary

As to Nam's claims, I conclude that Nam is entitled to summary judgment on his breach-of-contract claim against the defendants on all liability issues, leaving open the question of damages. On the other hand, I conclude that the defendants are entitled to summary judgment on Nam's "restitution" claim. Finally, as to Nam's claims, I find that neither party is entitled to summary judgment on Nam's breach-of-fiduciary-duty claim against Quichocho.

### C. The Defendants' Counterclaims

The defendants assert counterclaims for slander of title, breach of contract, breach of express contractual indemnity, waste, and quiet title. Nam has also moved for summary judgment on these claims, although the defendants have not cross-moved for summary judgment on them.

### 1. Slander of title
#### a. Arguments of the parties

Nam argues that he should be granted summary judgment on the defendants' slander of title action, because he enjoys an absolute privilege in filing his Complaint and the *lis pendens*. He contends

that the purpose of such a privilege is to afford litigants access to the courts and the ability to defend themselves without fear of retaliatory lawsuits. He argues that a *lis pendens* is essentially the republication of the allegations of the pleadings in a lawsuit.

The defendants argue that their claim for slander of title is not about defamation or reputation, but about Nam's disparagement of a legally protected interest in land. They argue that a *lis pendens* is "substantially justified" where the claimant has a reasonable, good faith basis in fact or law for believing that he has an interest in the property, but Nam's filing of a *lis pendens* is not justified, because Nam knows, or should know, that the Ground Lease was properly terminated because he breached it.

### b. Analysis

■ As the Commonwealth Supreme Court has explained, at least parenthetically,

> Slander of title is a common law intentional tort. The Restatement (Second) of Torts § 624 defines slander of title as "the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary harm to the other through the conduct of their persons in respect to the other's interests in the property." The Restatement also makes clear that slander of title is distinct from personal defamation (i.e., libel or slander), and should be treated differently. *See* Restatement (Second) of Torts § 624 cmt. *a* (1977).

*Dela Cruz Camacho v. Demapan,* 2010 WL 997108, *4 ¶ 16 n. 11 (N.Mar.I. March 16, 2010). Various courts have expressly recognized that the filing of a *lis pendens* is absolutely privileged and cannot be the basis for a claim of slander or disparagement of title. *See City of Angoon v. Hodel,* 836 F.2d 1245, 1247 (9th Cir.1988) (noting that both California and Alaska recognize that the filing of a *lis pendens* is absolutely privileged). On the other hand, the Arizona legislature changed the common-law rule that the recording of a *lis pendens* was absolutely privileged, instead proscribing the filing of any document against real property by a person who knows or has reason to know that the document is " 'forged, groundless, contains a misleading statement or false claim or is otherwise invalid.' " *Jamieson v. Slater,* 2009 WL 2913484, *3 (D.Ariz.2009) (quoting A.R.S. § 33–420(A)).

Even if the Commonwealth were to adopt the exception to the privileged status of a *lis pendens* adopted by the Arizona legislature, the defendants' claim of slander of title would fail as a matter of law. Because I found, above, that Nam is entitled to summary judgment on his claim of breach of contract, over the defendants' assertion of various purported justifications, it is clear that Nam had no reason to know that his filing of the *lis pendens* in this case was groundless, contained misleading or false statements or claims, or was otherwise invalid.

Nam is entitled to summary judgment on the defendants' counterclaim for slander of title.

### 2. Breach of contract

For the same reasons that I granted Nam summary judgment on his breach-of-contract claim, thus rejecting as a matter of law the justifications offered by the defendants for their termination of the Ground Lease, I also grant summary judgment on the defendants' counterclaim for breach of contract. Nam did not breach the Ground Lease as a matter of law, the defendants did.

### 3. Breach of contractual duty to indemnify

#### a. Arguments of the parties

Nam's argument on this claim is very succinct: He argues that there is no evidence to support this or any other counterclaim, because the defendants breached the Ground Lease. The defendants argue, in essence, that this counterclaim should survive summary judgment, because Nam breached the Ground Lease by failing to procure adequate insurance and by abandoning the Premises.

#### b. Analysis

Again, because I granted Nam summary judgment on his breach-of-contract claim, he is also entitled to summary judgment on the defendants' counterclaim of breach of contractual duty to indemnify.

### 4. Waste

#### a. Arguments of the parties

Nam acknowledges that the defendants' counterclaim for waste alleges that he abandoned and neglected the Premises and allowed the Premises to be used as a dumping ground for garbage. However, he argues that the defendants have failed to present any evidence of lasting or permanent physical damage to the Premises and have failed to show how their interest in the Premises has been diminished, let alone *substantially* diminished, by the supposed abandonment and neglect.

The defendants confirm that the Counterclaim alleges that Nam committed waste by abandoning, neglecting, and allowing the property to be used as a dumping ground for garbage. They allege that they have substantiated this claim with evidence that the Premises were used as a dumping ground for trash, oil containers, and copper wire insulation. Thus, they contend that they can establish at least a triable issue of fact that Nam's conduct was unreasonable, which resulted in physical damage to the Premises and substantially diminished the value of the property.

#### b. Analysis

The defendants' counterclaim for "waste" requires separate consideration. Here, the Ground Lease permitted Nam to "use, improve, and develop the Premises or any part thereof for any lawful use or purpose, provided that Lessee shall not commit waste." Ground Lease at ¶ 2. As the Commonwealth Supreme Court has explained, "[A]n impermissible 'change in the physical condition of . . . leased property' may constitute waste." *Camacho v. L & T Int'l Corp.*, 1996 WL 33364550, *3 (N.Mar.I. Feb. 9, 1996) (citing RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT) § 12.2 cmt. *a* (1977)). More specifically, the RESTATEMENT provides as follows:

> (2) Remedies of landlord for impermissible .changes by tenant—In situations not described in subsection (1) [which pertains to permissible changes], except to the extent the parties to a lease validly agree otherwise, there is a breach of the tenant's obligation if he makes changes in the physical condition of the leased property and the leased property cannot be restored to its former condition, or if it can be restored to its former condition, it is not so restored promptly after a request from the landlord to do so; and for this breach, the landlord may:
>
> (a) terminate the lease and recover damages;
>
> (b) continue the lease and recover damages; and
>
> (c) in an appropriate case, obtain equitable relief.

RESTATEMENT (SECOND) OF PROPERTY (LANDLORD & TENANT) § 12.2(2). The defendants contend that the "waste" in this case consisted of allowing the Premises to be used

as a dumping ground for trash, oil containers, and copper wire insulation. "Even though damage to the leased property is caused by a third person who is wrongfully on the leased property, the conduct of such third person may be attributable to the tenant for the purpose of applying the rule [of waste], if the tenant did not take reasonable steps available to him to restrain the third person's conduct, or if the tenant's conduct encouraged the wrongful invasion of the leased property by a third person." *Id.* at cmt. *g.*

■ What is clear is that the "waste" must be a change in the physical condition of the property that cannot be restored to its former condition or that can be restored to its former condition, but the tenant fails to do so promptly after the landlord makes a request that the tenant do so. *Id.* at § 12.2(2). The defendants have failed to generate any genuine issues of material fact that the dumping of trash, oil containers, and copper wire insulation was such that the Premises could not be restored to their former condition. Similarly, they have failed to generate any genuine issues of material fact that, if the Premises could be restored, they ever requested or demanded that Nam do so. Nothing in the extensive correspondence concerning alleged defaults by Nam and termination of the Ground Lease even refers to "waste" as a default or ground for termination or could reasonably be construed as a demand that Nam restore the Premises to their former condition free of dumped trash, oil containers, and copper wire insulation.

Thus, Nam is entitled to summary judgment on the defendants' counterclaim for "waste."

### 5. Quiet title
#### a. Arguments of the parties

Nam argues that, because he is entitled to summary judgment on his claims and the defendants' other counterclaims, he is also entitled to summary judgment on the defendants' claim to quiet title. Similarly, the defendants argue that, because they are entitled to summary judgment on Nam's claims, Nam is not entitled to summary judgment on their counterclaim to quiet title. They argue that, if anything, the undisputed facts show that they are entitled to summary judgment on this claim.

#### b. Analysis

The only claim on which I have not found that summary judgment is appropriate is Nam's claim for breach of fiduciary duty by Quichocho. I do not believe that claim places any cloud over the title to the Premises. Indeed, the claims on which I have granted summary judgment establish that the Ground Lease for the Premises was wrongfully terminated. Thus, the defendants are not entitled to summary judgment in their favor on their request that the court quiet title in their favor on the Premises.

### 6. Summary

Nam is entitled to summary judgment on all of the defendants' counterclaims.

## IV. CONCLUSION

Upon the foregoing,

1. The defendants' August 11, 2011, Motion To Strike The Declaration Of Stephen J. Nutting (docket no. 35), contained in their Opposition To Nam's Motion For Summary Judgment, is **denied.**

2. Plaintiff Nam's July 25, 2011, Motion For Summary Judgment (docket no. 27) is **granted in part and denied in part,** as follows:

a. The motion is **granted** as to the defendants' liability on Nam's claim of

breach of contract, leaving only Nam's remedies for the defendants' breach of the Ground Lease for trial;

    b.  The motion is **denied** as to Nam's restitution claim;

    c.  The motion is **denied** as to Nam's breach of fiduciary duty claim; and

    d.  The motion is **granted** as to the defendants' counterclaims for slander of title, breach of contract, breach of contractual duty of indemnity, waste, and quite title.

3.  The defendants' July 25, 2011, Motion For Summary Judgment (docket no. 32) is **granted in part and denied in part,** as follows:

    a.  The motion is **denied** as to Nam's claim of breach of contract; and

    b.  The motion is **denied** as to Nam's claim of breach of fiduciary duty; but

    c.  The motion is **granted** as to Nam's restitution claim.

Thus, this matter will proceed to trial only on Nam's remedies for breach of contract and on the entirety of his claim for breach of fiduciary duty against Quichocho.

    **IT IS SO ORDERED.**